FORESTER ET AL., APPELLEES, *v.* SCOTT, APPELLANT.

(No. 32480—Decided November 29, 1973.)

*Mr. Bernard James,* for appellee.
*Messrs. Snyder, Neff & Chamberlin,* for appellant.

JACKSON, J. Joyce Renee Forester (plaintiff-appellee) by her mother, Virginia (Forester) Cockrell, filed this action against Mark E. Scott (defendant-appellant) to enforce a written agreement between appellant and Perry Forester made on behalf of the appellee. The trial court found that under this agreement the plaintiff was entitled to $15 per week from June 11, 1961, to the present and for future installments of $15 per week until the plaintiff's eighteenth birthday on June 11, 1979. The court further found that only $140 had been paid since 1961, and accordingly reduced the arrearage of $8905 to judgment.

Appellant asserts that this judgment is contrary to law and against the manifest weight of the evidence. Appellee has failed to file a rebuttal brief.

The evidence consists of stipulations of fact and a copy of the contractual agreement. It appears that in 1961, while Virginia (Forester) Cockrell was married to Perry Forester, she gave birth to Joyce Renee Forester. Just prior to the child's birth, Perry Forester entered into what may be described as a third-party beneficiary contract with the appellant. It provided that the appellant would pay $15 per week "for the support of a child which is to be born on or about the 1st day of June 1961, until such time as said child reaches its eighteenth birthday." It further provided that appellant "will not attempt to see the child nor its mother at any time during the child's minority;" that "the child will take and bear the name Forester and that no claim other than the $15 per week will be demanded of Mark Scott for the maintenance and support of the said child." In return for this promise, Perry Forester agreed "to release Mark Scott from any and all claims against said Mark Scott for the alienation of the affections of Virginia Forester by Mark Scott, for the loss of services of Virginia Forester to Perry Forester, her husband, and for the assault and battery of said Virginia Forester by Mark Scott."

Subsequently, Virginia Forester and Perry Forester were divorced in 1963. In 1962 the appellant filed a voluntary petition in bankruptcy in federal court, listing Perry Forester and Virginia Forester as unsecured creditors on the support contract. No objections were filed to the petition, and on June 5, 1963, the debts of the appellant were discharged. In 1964 a distribution of $140 was made to satisfy the existing debt on the contract.

It is noteworthy that nowhere in the written contract, the pleadings, or the stipulations of fact does the appellant admit or the appellee allege that the appellant is in fact the father of the plaintiff appellee.

Appellant asserts two arguments against the trial court's order. First, it is urged that the contract was unenforceable because there was insufficient evidence adduced to prove that it was supported by valuable consideration flowing from the Foresters. Second, it is contended

that the appellant was released from his obligation under the contract by his discharge in bankruptcy in 1963. After a careful examination of the record we are persuaded that the first argument has merit and, thus this assignment of error is well taken. Because this argument provides a sufficient ground for reversal, we find it unnecessary to consider the merits of the second assignment of error regarding the effect of discharge in bankruptcy.

One of the essential elements which must be proved to establish a claimant's right to recover for breach of contract is that the contract was supported by a bargained-for exchange of legally sufficient consideration.[1] Even if the defending party asserts in the pleadings that there is a want of consideration the burden of proof still remains upon the complainant to show the consideration.[2] In the instant case, the stipulations of fact and the exhibit copy of the written contract between Perry Forester and Mark Scott show that the former's promise to forbear to bring suit against the latter for criminal conversation and alienation of affections was given in exchange for the latter's promise to pay support money to the third party beneficiary, the plaintiff appellee. However, the question arises whether this evidence was sufficient to establish the existence of valuable consideration given by Perry Forester. To be sure, it is a well-recognized principle of contract law that a promise to forbear to prosecute a claim on which one has a right to sue may be sufficient consideration to support a contract.[3] But, as the very statement of this rule should suggest, the promise to forbear has legal efficacy only in reference to the underlying claim which is surrendered by the passive act of forbearance. For it would be neither equitable nor legally sound to hold that the utter-

[1]*Silberman* v. *National City Bank* (1930), 36 Ohio App. 442.

[2]*Klein & Heffelman Co.* v. *Peterman* (1916), 6 Ohio App. 145, 148.

[3]*Bidinger* v. *Bidinger* (1950), 89 Ohio App. 274, 281; *Coate* v. *Hartley* (1943), 39 Ohio Law Abs. 277, 280. *See generally* Restatement of Contracts §§76(b) & 78 (1932); 1 A. Corbin, Contracts §139 (1963); J. Calamari & J. Perillo, The Law of Contracts §50 (1970); 1 S. Williston, A Treatise on the Law of Contracts §135B (3d ed. 1957).

18

ance of a promise to forbear is sufficient consideration in the sense that the performance of the promise results in a legal detriment to the promisor, if the promisor did not have a valid actionable claim to surrender.

In this regard, there has emerged a divergency of views regarding the legal significance which should be attached to a forbearance based on an invalid claim. The earliest decisions took the fairly strict position that the surrender of an invalid claim can never be valid consideration because no real detriment is suffered by the claimant.[4] Later decisions assuaged the harshness of this view by holding that a claim can be reasonably doubtful and still be a valid claim whose surrender would be sufficient consideration to support a contract.[5] Finally, the modern trend of authority is to move still further away from an objective view of the actual validity of the surrendered claim and to focus primarily on whether the claimant's subjective belief in its legitimacy is honest and sincere; the only remnants of an objective standard are that the asserted claim must not be "frivolous, vexatious, or unlawful"[6] and that asserted good faith belief "would affront the intelligence of ordinary and reasonable layman."[7] Compared to the first cases on the subject, the most recent ones clearly require a minimal degree of objective certainty in the existent validity of the surrendered claim.

Appellant has not cited, nor have we found, any reported decisions indicating which view Ohio embraces. Regardless of which position represents the Ohio view, we think that it was incumbent upon the appellee to establish, with the requisite degree of certainty, the existent validity

[4]See *Fiege* v. *Boehm* (1955), 210 Md. 352, 360, 123 A. 2d 316, 321; *Lombardo* v. *Gasparini* (1956), 385 Pa. 388, 390-91, 123 A. 2d 663, 665, for discussion of this early view.

[5]*E. g., Carter* v. *Provo* (1935), 87 N. H. 369, 370, 180 A. 258, 259.

[6]*Melotte* v. *Tucci* (1946), 319 Mass. 490, 492, 66 N. E. 2d 357, 358; *Higgins* v. *Gilchrist Co.* (1938), 301 Mass. 386, 390, 17 N. E. 2d 160, 162.

[7]*Hall* v. *Fuller* (Ky. 1961), 352 S. W. 2d 559, 562. Compare Restatement of Contracts §§76(b) & 78 (1932).

of the surrendered claim." Otherwise, there is the possibility that no valuable consideration was exchanged from the appellant's promise to pay support. Thus, giving the appellee the benefit of the modern view, it was necessary that she prove at the very least that Perry Forester had an honest and reasonable belief that he had a cause of action against the appellee for criminal conversation and alienation of affections, which he surrendered as his consideration for the contract. In the record before us, there is no evidence of Perry Forester's belief in the existence of any claim which he may have had against the appellant. That the appellant had sexual intercourse with Perry Forester's wife, of course, could have given Perry Forester a cause of action against the appellant." However, there is no evidence in the record to establish that fact. Nor can it be inferred from the birth of the appellee that the appellant had sexual intercourse with Virginia Forester, since, at the time of appellee's birth, the mother was still married to Perry Forester, a fact which creates an overriding legal presumption that Perry Forester was the father of the appellee.[10] Without sufficient proof of consideration, it was error for the trial court to enter judgment for the appellee.

Parenthetically, we think it is appropriate to comment on appellant's argument in his brief that Virginia Forester, because she was married at the time the appellee was born, did not have a claim for support against the appellant by way of a paternity action. This argument seems to be based on the factual assumptions that the appellant was the father of the appellee and that the contract in dispute here was an attempt to circumvent the limitation in R. C. Chapter 3111 that a woman must be unmarried in order to secure support for her bastard child from the pu-

---

[8]Cf. *Dillow* v. *Phalen* (1957), 106 Ohio App. 106, 109, which held that the plaintiff in an action for breach of contract had the burden of pleading and establishing by the evidence the relinquishment of a valuable right as her consideration for the alleged promise of the defendant.

[9]*Trainor* v. *Deters* (1969), 22 Ohio App. 2d 135; *Baltrunas* v. *Baubles* (1926), 23 Ohio App. 104.

[10]*Rose* v. *Rose* (1968), 16 Ohio App. 2d 123.

tative father. It is true, that in 1961, when the contract was signed, Virginia Forester would have been without legal recourse against the appellant for support and maintenance of the appellee Joyce Forester, for until recently the laws of this state did not allow a married woman who had delivered a bastard child to bring a paternity action against the putative father. However, in 1972, after this action was filed, the Supreme Court in *Franklin* v. *Julian*[11] removed this obstacle by fashioning a new legal remedy: where the mother of a bastard child is married, she may file a civil action in Common Pleas Court for necessaries furnished in the past and for future support. Like statutory proceedings under R. C. 3111, she would, of course, have the burden of proving that the defendant was the putative father. If, indeed, the appellant here is the father of the appellee and the purpose of the contract was an effort to enforce appellant's obligation to support her—facts which cannot be reasonably inferred from the record of evidence before us—then appellee is not without legal recourse. *Franklin* v. *Julian, supra,* provides an alternative.

For the foregoing reasons the decision of the trial court is reversed and judgment granted to the appellant.

*Judgment reversed.*

MANOS, C. J., and KRENZLER, J., concur in judgment only.

KRENZLER, J., concurring. I concur in the judgment of reversal but for reasons different than those stated in the opinion.

The written agreement between Mark E. Scott and Perry Forester identified as Exhibit A. is valid and binding because it contains all of the elements of a contract.

Mark E. Scott agreed to pay Perry Forester the sum of $15 per week for the support of a child to be born to Virginia Forester, the wife of Perry Forester. In consideration of the foregoing payment, Perry Forester agreed

---

[11](1972), 30 Ohio St. 2d 228.

to release Mark Scott from any and all claims for (1) the alienation of the affections of Virginia Forester by Mark Scott; (2) for the loss of services of Virginia Forester to Perry Forester, her husband; (3) for the assault and battery of said Virginia Forester by Mark Scott. This is clearly valid consideration for the contract, and the trial court did not commit error in determining that the contract was valid and binding.

However, the trial court committed error in granting judgment to the plaintiff in the amount of $8,905 because the debt created by the contract was discharged in the bankruptcy proceedings. It was stipulated that defendant Mark E. Scott filed a voluntary petition in bankruptcy, and that Perry Forester filed a claim and was listed as an unsecured creditor and that his claim was allowed. Mark E. Scott was then granted a discharge in bankruptcy. Bankruptcy Act, Title 11, U. S. C. A., §35(a)(7), (1970) provides that a discharge in bankruptcy shall release a bankrupt from all of his provable debts except alimony due or to become due, or for maintenance or support of a wife or child.

A careful review of the agreement clearly establishes that the obligation to pay is not an excepted debt for maintenance or support of a wife or child, and is dischargeable in bankruptcy.

The decision and judgment of the Common Pleas Court is contrary to law and should be reversed.