Arlen TERRELL, et al., Plaintiffs,

v.

DURA MECHANICAL COMPONENTS, INC., Defendant,

v.

INTERNATIONAL UNION OF UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Third–Party Defendants.

No. 3:93 CV 7584.

United States District Court,
N.D. Ohio,
Western Division.

June 11, 1996.

Joan Torzewski, Michael Scott Jones, Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH, for Arlen Terrell, Lynn Brock, Clarence Bernhard, Doreen Degg, Chester Swiderski, Jean Bollinger, Richard Schlachter, James R. Larcom, Robert Betts, Gerald Dutridge, Rose Jordan, Robert Kaiser, William Raymond, Michael Raymond, James Babcock, Janet Kemper, Gary Schondel, James Bugan, Elli Holycross, Irene Capron, Gene Miller, Raymond Hoover, Gerald Getling, Richard Szymanski.

Joan Torzewski, Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH, for Dale Ireland, Victoria Kidd.

Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, OH, Steven C. Miller, Law Offices of Martin L. Garden & Associates, Minneapolis, MN, for Dura Mechanical Components Inc.

Joan Torzewski, Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH, for Intl. Union, United Auto, Aerospace and Agricultural Implement Workers of America of America, and Local 16 UAW, third-party defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on cross motions for summary judgment. For the following reasons, Plaintiffs' and Third–Party Defendants' motion for summary judgment will be denied. Defendant's motion for summary judgment will be granted.

This is an action for retiree health insurance benefits brought by twenty-six former employees of Defendant Dura Mechanical Components, Inc. ("Dura"). Plaintiffs contend that Defendant's termination of the benefits violated the Collective Bargaining Agreement between Defendant and the union to which Plaintiffs belonged, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Defendant contends that none of the Plaintiffs qualify for the benefits at issue.

Dura has filed a third-party complaint against the International Union of United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "the Union"), which complaint is based on the UAW's financial sponsorship of the instant litigation. Dura contends that the Union's sponsorship of this case is a violation of the Plant Closing Agreement between Dura and UAW. UAW contends that the claims brought in this lawsuit are outside the scope of the Plant Closing Agreement.

### I. BACKGROUND

On November 30, 1990, Defendant Dura Mechanical Components, Inc. purchased the Toledo, Ohio manufacturing facility operated by the Dura Automotive Hardware Division of Wickes Manufacturing Company ("Wickes"). Under the terms of the sales agreement between Wickes and Dura, Wickes retained all financial obligations for retirement pension payments, and Dura assumed liability for retiree health insurance plans.

At the time of the purchase, Wickes and the UAW were parties to a Collective Bargaining Agreement ("CBA"), which contained the two retirement benefit provisions at issue in this case. Article IV of the CBA provides, in pertinent part:

8. Special Age 65 Benefit

... [A] retired Employee sixty-five (65) or older who is receiving a monthly benefit ... shall receive a monthly Special Age 65 Benefit equal to the amount of the premium for Medicare Part "B" (in addition to the amount of monthly pension otherwise provided)....

9. Section 9 Benefit

Any Employee who has retired and who received in any month a ... retirement benefit and who ... is an "Insured Individual" shall be entitled to a "Section 9 Benefit" ... under the plan. An "Insured Individual" is one who is enrolled for hospitalization and medical coverage ... under the Company's Insurance Plan.... A "Section 9 Benefit" shall be an amount ... equal to fifty (50) percent of the monthly premium payable to retain such Employee's covered status under such Plan....

(Joint Stip. of Facts at 4.) Article XII of the CBA, which addresses retirement benefits,

provides that the 50% retiree health insurance coverage "will continue for the duration of this Agreement only provided that the Company shall be free of its obligation during the period that any such retired employee is employed by any other employer who provides its employees with medical insurance." (*Id.* at 6.) The CBA further provides that it "may be modified, altered, or amended upon mutual agreement of the Company and the Union." (*Id.* at 5.) The CBA expired on January 31, 1991, and Dura and UAW began negotiating for a new CBA at that time.

By letter dated February 13, 1991, Dura notified its employees that all retiree health insurance benefits would be terminated, effective February 28, 1991. On February 26, 1991, two of Defendant's retired employees filed suit in the District Court, on behalf of themselves and all others similarly situated, to compel Defendant to pay those insurance benefits. *Chinni v. Dura Mechanical Components, Inc.,* Case No. 3:91 CV 7107. On March 22, 1991, the Court granted a preliminary injunction in *Chinni,* ordering Dura to continue to pay its retirees the Special Age 65 and Section 9 Benefits pending disposition of the suit.

Thereafter, difficulties in the automotive industry resulted in the closing of the Toledo plant. Dura announced the phased shutdown of the plant on May 2, 1991. Dura and UAW thereafter entered into negotiations for a Plant Closing Agreement. The Plant Closing Agreement, which was meant to be a comprehensive resolution of all issues between the parties, was executed and ratified on December 17, 1991.

Several portions of the Plant Closing Agreement addressed the issues of retiree insurance benefits, settlement of claims, and the then-pending *Chinni* litigation. The salient portions are reproduced below:

Article V—Vested Benefits

Employees shall continue to accrue the benefits and benefit eligibility set forth in this Article during all periods prior to the individual permanent layoff. Employees shall receive fringe benefit payments covered by this Article in accordance with the expired collective bargaining agreement unless the employee, his union and the employer agree to a different payment period. Only those benefits specifically enumerated below are considered vested benefits which must be paid. Any benefit not explicitly provided in this Article ends. For purposes of this section benefits include the following: [vacation pay; holiday pay; life insurance for active employees; hospitalization insurance for active employees; prescription drug coverage; bereavement pay; jury duty pay]. . . .

The Company shall have no obligation to provide Retirement Income Plan coverage or benefits. Accrual of such benefits ended with acquisition of the Toledo plant effective November 30, 1990.

Article VI—Settlement

C. The Union represents that in the "retiree health insurance"—Case No. 3:91 CV 7107, the parties have agreed in principle to the major issues of the settlement. The minor issues which remain are close to resolution and should not impede full settlement. After class notification and approval, said action will be dismissed against the Company and Wickes.

\* \* \* \* \* \*

G. The Union, on behalf of itself and its members, and the Company waive all legal claims against each other including claims for breach of collective bargaining agreement, ERISA, wrongful discharge, employment discrimination, the WARN Act, National Labor Relations Act or any other statute or theory of law. It is the intent of the parties to resolve all potential claims by this plant closing agreement.

While the Plant Closing Agreement was being negotiated, negotiations continued in the *Chinni* litigation. On March 2, 1992, roughly twelve weeks after the Plant Closing Agreement was ratified, the *Chinni* plaintiffs filed a motion for provisional class certification pending settlement of that action. In that motion, the plaintiffs sought to include in the settlement class three categories of plaintiffs in addition to the group of Dura's former employees who had retired prior to January 31, 1991. Specifically, the plaintiffs sought to add: (1) active employees of Dura who retired after January 31, 1991 and were

granted a retroactive retirement date by Wickes; (2) individuals making claims under Wickes' 85–point retirement plan;[1] and (3) applicants for disability pensions ·from Wickes. The Court found that there were sufficient differences in the claims of the three groups sought to be added that those groups did not qualify for inclusion in the class, and declined to certify the members of those three groups as members of the class. The *Chinni* litigation concluded on April 9, 1993, when the Court approved a settlement agreement between the parties in which Dura agreed to pay the Special Age 65 and Section 9 Benefits to the retirees in the *Chinni* class.

On October 18, 1983, certain members of the three groups that the Court declined to add to the *Chinni* class brought the instant litigation in this Court, raising the same claims that were previously raised by the *Chinni* litigants.[2] Fourteen of the Plaintiffs in the case at bar are employees of Dura who retired between May and September of 1991 and were granted pension benefits retroactive to December 1, 1990 by Wickes. Eleven of the Plaintiffs are employees who retired pursuant to the 85–point plan during July and August of 1991 and were granted pension benefits retroactive to December 1, 1990 by Wickes. One Plaintiff is an employee who submitted an application for disability pension benefits and was granted such benefits as of December 1, 1990 by Wickes.

Plaintiffs claim that the Special Age 65 Benefit and the Section 9 Benefit are vested lifetime rights, and that Defendant's elimination of the Benefits violates the CBA and ERISA. Plaintiffs further claim that by eliminating the retirement insurance benefits, Defendant breached its fiduciary duty to discharge its duties with respect to the plans solely in the interest of its participants.

Defendant has filed a third-party claim against UAW, based on UAW's financing of this litigation. Defendant alleges that UAW breached the Plant Closing Agreement by subsidizing the instant litigation.

Both sides have moved for summary judgment on all claims. Plaintiffs argue that their retirement insurance benefits vested prior to expiration of the CBA because Plaintiffs were *eligible* to retire at that time, although they did not *actually* take retirement until after January 31, 1991. They claim that they did not waive those vested rights in the Plant Closing Agreement because the retirement insurance benefits were outside the scope of the issues resolved by the Plant Closing Agreement. They argue further that the Court's entry of judgment in *Chinni* precludes Defendant from relitigating the issue of whether the retirement insurance benefits were vested, unforfeitable rights. Therefore, Plaintiffs claim, Dura violated the CBA and ERISA by terminating the Special Age 65 and Section 9 benefits.

Defendants argue that Plaintiffs' rights to the retirement insurance benefits never vested because Plaintiffs did not retire until after January 31, 1991. Furthermore, they argue, Plaintiffs waived whatever claims they otherwise might have had when they ratified the Plant Closing Agreement. They argue that the judgment in *Chinni* does not control this action because the Court in *Chinni* expressly declined to include individuals who retired after January 31, 1991 in the class of individuals to whom the Special Age 65 and Section 9 Benefits must be paid.

The Court discusses the parties' contentions below.

## II. DISCUSSION

### A. Summary Judgment Standard

 As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

1. Under Wickes' 85–point plan, an employee whose age plus years of service equals or exceeds eighty-five is eligible for retirement.

2. There were thirty-seven Plaintiffs to the instant litigation when it was originally filed. On July 31, 1995, Plaintiffs filed an amended complaint, in which twenty-six Plaintiffs remained as parties. The Court addresses only the claims of the twenty-six remaining Plaintiffs.

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

■ Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. The Collective Bargaining Agreement

#### 1. Vesting of Retiree Insurance Benefits Generally

The first issue the Court must decide is whether the parties intended by the language of the Collective Bargaining Agreement to create a vested right in retirement insurance benefits. If no such right was intended, the Court's inquiry ends, and summary judgment in Defendant's favor must be granted. If the parties did intend to created a vested right, the Court must then ask whether the contract gives Plaintiffs, who retired after expiration of the CBA, vested rights, and, if so, whether Plaintiffs waived those rights in the Plant Closing Agreement.

■ ERISA divides employee benefit plans into two types: pension plans and welfare benefit plans. 29 U.S.C. § 1002(1), (2)(A). Pension plans are subject to mandatory participation, vesting and funding requirements. 29 U.S.C. §§ 1051, 1081. Welfare benefit plans are not. *Id.* A retiree health insurance benefits plan is a welfare benefit plan, 29 U.S.C. § 1002(1), and, therefore, not subject to statutory vesting requirements. The parties to an employment agreement can, however, agree by contract to vest the benefits pursuant to such a plan. *Golden v. Kelsey–Hayes Co.*, 73 F.3d 648, 653 (6th Cir.1996) *petition for cert. filed*, 64 U.S.L.W. 3727 (U.S. Apr. 17, 1996) (No. 95–1884); *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1377 (6th Cir.1994), *cert. denied* — U.S. ——, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994); *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir.1993).

■ The Sixth Circuit has set forth a set of principles to guide the Court in determining whether retiree insurance benefits continue beyond the expiration of a collective bargaining agreement in *International Union, United Auto. Workers, v. Yard–Man, Inc.*, 716 F.2d 1476 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).[3] Since any such surviving benefit must find its genesis in the collective bargaining agreement, the Court uses traditional rules of contract interpretation to determine the expressed intent of the parties.

---

3. Defendant has argued that *Yard–Man*'s continued validity is doubtful in the wake of the Supreme Court's decision in *Curtiss–Wright Corp., v. Schoonejongen*, — U.S. ——, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). The Court need not address that argument. In an opinion issued shortly after Defendant submitted its motion for summary judgment, the Sixth Circuit made it clear that *Yard–Man* remains the law of this Circuit. *Golden v. Kelsey–Hayes Co.*, 73 F.3d 648, 654–66 (6th Cir.1996).

[T]he court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance.... Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy.

*Id.* at 1479–80 (citations omitted).

Accordingly, the Court first looks to the explicit language of the CBA for evidence of whether the parties intended the Special Age 65 and Section 9 Benefits to survive the expiration of the CBA. No durational limit is given in Article IV of the CBA, which describes the benefits.

■ Defendant argues that the language in Article XII supports its position that the benefits were not intended to be vested. That Article provides that retirement insurance benefits "will continue for the duration of this Agreement only provided that the Company shall be free of its obligation during the period that any such retired employee is employed by any other employer who provides its employees with medical insurance." Defendant urges the Court to construe the foregoing clause as if there were a comma after the word "only". *I.e.*: "The retirement insurance benefits will continue for the duration of this Agreement only—and then stop. Additionally, the Company shall be free of its obligation during the period that any such retired employee is employed by any other employer who provides its employees with medical insurance."

The Court finds that Article XII is ambiguous. An equally reasonable interpretation can be achieved by construing the sentence as if the separation appeared *before* the word "only". *I.e.*: "The retirement insurance benefits will continue for the duration of this Agreement. The one exception to continued benefits is that the Company shall be free of its obligation during the period that any such retired employee is employed by any other employer who provides its employees with medical insurance." So construed, the clause merely means that retiree health insurance benefits are suspended if a retiree goes back to work for an employer who provides equivalent coverage.

Since the only arguably durational clause of the CBA is ambiguous, the Court takes the next step in the *Yard–Man* analysis by looking to the larger context in which the agreement exists. The Court may also use extrinsic evidence to aid in its determination of whether the parties intended the retirement insurance benefits to survive expiration of the CBA. *Wulf,* 26 F.3d at 1376; *Boyer,* 986 F.2d at 1005.

The *Yard–Man* Court began its analysis by looking at other provisions of the entire CBA for evidence of intent and an interpretation of the specific provisions relating to retirement insurance benefits that would be harmonious with the entire document. For instance, the Court pointed to the fact that termination of insurance benefits for active employees was explicitly set out, while termination of insurance benefits was retirees was not, as evidence that no termination was intended for retirees. Similarly, the Court found that the inclusion of specific durational limitations in other provisions of the CBA, but not the retirement benefit provisions, indicated that the retiree benefits were intended to survive the expiration of the CBA. *Yard–Man,* 716 F.2d at 1480–82.

Unfortunately, the parties to the instant action have not provided the Court with a complete copy of the CBA between Wickes and UAW; the record contains only a set of excerpts pertaining specifically to retiree insurance benefits. The excerpts before the Court, and the available extrinsic evidence,

indicate that Wickes and the UAW intended to create vested insurance benefits that survive the CBA. First, a finding that the benefits were not intended to be vested could render certain terms of the CBA illusory. The Special Age 65 Benefit is available only to retirees age sixty-five or older. An employee who began to work for Defendant's predecessor at age twenty-one would be eligible to retire under the 85–point plan at age fifty-three, twelve years before his or her eligibility for the Special Age 65 Benefit began. Thus, the company's promise to pay Special Age 65 Benefits could remain outstanding for a twelve-year period, far longer than the anticipated life of the CBA. If retiree insurance benefits were terminated at the end of the CBA, this promise would be illusory for many early retirees. *See id.* at 1481. Second, the negotiating context in which the benefits arose indicates that the benefits were intended to be vested. Retirement benefits are typically understood as a form of delayed compensation for present services, for which workers forego present wages. *Allied Chemical Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 180, 92 S.Ct. 383, 398, 30 L.Ed.2d 341 (1971) (future retirement benefits are part of employees' overall compensation). It is unlikely that workers would leave a significant portion of their remuneration to the contingencies of future bargaining agreements, especially since they are presumably aware that the union is not obliged to bargain for continued benefits for retirees. *See Yard–Man,* 716 F.2d at 1482. Finally, the Court follows *Yard–Man's* holding that retiree benefits carry with them an inference that they continue so long as the beneficiary remains a retiree.

The Court finds, therefore, that the language of the Collective Bargaining Agreement creates a vesting right in retirement insurance benefits, which right survives the expiration of the Collective Bargaining Agreement.

**2. Time at Which Retirement Benefits Vest**

Having determined that the CBA creates a vesting right in the benefits at issue, the Court must next address the issue of when

that right vests. Plaintiffs argue that the right vests as soon as the employee is eligible for retirement, whether the employee actually takes retirement at that time, or delays retirement. Defendants argue that the right does not vest until the employee actually takes retirement. Since the Plaintiffs to this action did not retire until after expiration of the CBA, argues Defendant, the CBA expired without Plaintiffs' rights ever vesting, and they are not eligible for the retirement insurance benefits.

The same issue was presented in *UAW v. Park–Ohio Indus., Inc.,* 661 F.Supp. 1281 (N.D.Ohio 1987), *rev'd in part mem.* 876 F.2d 894 (6th Cir.1989). In that case, the Court found that if the right did not vest until the employee actually took retirement, "longtime employees entitled to contractually vested health benefits would lose them merely because they chose to not retire at an early date.... [T]he dissipation of benefits otherwise vested would render them 'illusory.'" *Id.* at 1293. Accordingly, the Court held that it was not necessary for a beneficiary actually to be retired to have vested benefits that will be payable when retirement status is taken, although such benefits are not payable when the beneficiary is not retired. *Id.*

The Sixth Circuit adopted the same reasoning in *Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir.1991). On similar facts, that Court affirmed a District Court holding that retirement insurance benefits vested at the time the employee became eligible for retirement, rather than the time the employee actually retired. They held that if an employer had the right to terminate a retiree benefits program unilaterally, its promise to provide retirement insurance benefits under the CBA would be illusory. "Because [retirement insurance] benefits are deferred compensation, it is unreasonable to suppose that the parties to the CBA intended to permit [the employer] to terminate the retirement insurance program unilaterally." *Id.* at 1297.

█ Defendant attempts to distinguish *Park–Ohio* on the ground that the contract at issue in *Park–Ohio* covered "present and future retired employees," while the CBA at issue in the instant case does not expressly

**882**

cover "future retired employees," which the *Park–Ohio* Court construed to mean employees eligible to retire during the agreement who retire after its expiration. *See Park–Ohio*, 661 F.Supp. at 1291. Defendant's effort is unavailing. Like the *Park–Ohio* plaintiffs, the Plaintiffs in the case at bar would lose otherwise contractually vested health benefits merely because they chose not to retire at an early date. Like the *Park–Ohio* Court, this Court is unaware of any similar situation where otherwise vested benefits may be forfeited merely because an employee remains part of the bargaining unit at the expiration of the collective bargaining agreement. *See id.* at 1293.[4]

The Court holds, therefore, that the retirement insurance benefits at issue vested when the employees became eligible for retirement. The language of the CBA gave Plaintiffs a vested right in retirement insurance benefits at the time of Plaintiffs' retirement.

## C. The Plant Closing Agreement

 The next question the Court must address is whether Plaintiffs waived their rights to the Special Age 65 and Section 9 benefits when they ratified the Plant Closing Agreement. A valid Plant Closing agreement supersedes a prior Collective Bargaining Agreement. *Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1388 (6th Cir.) (citing *Heussner v. National Gypsum Co.*, 887 F.2d 672, 677 (6th Cir.1989)), *cert. denied* —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994). The parties to the Plant Closing Agreement here at issue expressly "waive[d] all legal claims against each other including claims for breach of collective bargaining agreement [and] ERISA . . ." as part of that agreement. Defendant argues that the plain language of the Plant Closing Agreement waives any claim Plaintiffs might otherwise have had to the retiree health insurance benefits.

Plaintiffs respond that the Plant Closing Agreement was not intended to waive claims for retiree health insurance benefits. They point to a separate clause in the Plant Closing Agreement, which clause states in regard to the *Chinni* litigation that "the parties have agreed in principle to the major issues of the settlement. The minor issues which remain are close to resolution and should not impede full settlement. After class notification and approval, said action will be dismissed against the Company and Wickes." Plaintiffs claim that they ratified the Plant Closing Agreement in reliance on the belief that they would be included in the *Chinni* settlement class.

The Court agrees with Defendant that the plain language of the Plant Closing Agreement waives any claims Plaintiffs might otherwise have had against Defendant. The clause allegedly excluding retiree health insurance benefits from the terms of the Plant Closing Agreement refers only to the *Chinni* settlement class, a class that does not include Plaintiffs. It makes no reference to disputes raised by other parties regarding retirement benefits. By the plain language of the Plant Closing Agreement, the exclusion does not include the Plaintiffs to this action. The question then becomes whether Plaintiffs have adequately raised any defense to enforcement of the Plant Closing Agreement against them with regard to the retiree insurance benefits.

Plaintiffs' claim that the waiver contained in the Plant Closing Agreement should not be enforced against them as to the retiree insurance benefits is, at bottom, a claim of mistake. Plaintiffs claim that they ratified the Plant Closing Agreement in the belief that they would be included in the *Chinni* settlement class for the purpose of establishing their rights to retiree health insurance benefits. That belief was mistaken.

4. Defendant has attempted to buttress its arguments by citing to an unreported opinion from another jurisdiction, *Plis v. MGD Graphics Systems, Inc.*, No. 79–C–4787 (N.D.Ill. Nov. 30, 1981), *aff'd mem.*, 714 F.2d 146 (7th Cir.1983), which Defendant inexplicably has failed to attach to its motion. Nor is the opinion available on Westlaw. An unreported opinion from another jurisdiction is worth only what it weighs in reason. Since neither the facts underlying that Court's holding that the retirement benefits at issue did not vest until actual retirement, nor the reasoning used by that Court, is available to this Court, *Plis* is of little persuasive value in the instant case.

 Ohio law permits the rescission or reformation of a contract based on a mutual or unilateral mistake of fact. *Reilley v. Richards,* 69 Ohio St.3d 352, 352–53, 632 N.E.2d 507, 508–09 (1994). The doctrine of mistake does not cover an erroneous "prediction or judgment as to events to occur in the future," however. *United States v. Southwestern Elec. Co-op., Inc.,* 869 F.2d 310, 314 (7th Cir.1989); *Baker v. Penn. Mut. Life Ins. Co.,* 788 F.2d 650, 661–62 (10th Cir.1986); Restatement (Second) of Contracts § 151(a). When Plaintiffs waived "all legal claims against [Defendant] including claims for breach of collective bargaining agreement [and] ERISA," they appear to have done so based on an erroneous prediction that they would be added to the *Chinni* settlement class. Plaintiffs do not claim that they attempted to join the *Chinni* class until more than two months after they ratified the Plant Closing Agreement. Plaintiffs make no claim that Defendant misrepresented to Plaintiffs that Plaintiffs would be included in the *Chinni* class. Plaintiffs do not claim that they were unrepresented in the formation of the Plant Closing Agreement or that they did not have notice that the Plant Closing Agreement could affect their rights. Therefore, Plaintiffs cannot avoid waiver of their rights based on their misprediction that they would be included in the *Chinni* settlement class.

The Court holds, therefore, that Plaintiffs waived their claim to retiree health insurance benefits when they contractually waived all legal claims against Defendant, including claims for breach of the Collective Bargaining Agreement and ERISA.

### D. *UAW's Financing of the Instant Litigation*

 Defendant has moved for summary judgment that UAW's is liable for breaching the Plant Closing Agreement by financing this action. The parties agree that the Plant Closing Agreement contains a covenant not to sue, and that such covenants are enforceable, *Forester v. Scott,* 38 Ohio App.2d 15, 311 N.E.2d 27 (1973). Plaintiff responds that it is not in violation of the Plant Closing Agreement because the parties contemplated that the claims raised by Plaintiffs would be excluded from the Plant Closing Agreement.

The Court's determination, *supra,* that the Plant Closing Agreement covers the claims raised by Plaintiffs controls its determination of this issue as well. Since the Plant Closing Agreement covers the claims raised by Plaintiffs, UAW's financing of the instant litigation is a violation of the Plant Closing Agreement.

The Court finds, therefore, that UAW is liable to Defendant for damages caused as a result of its violation of the Plant Closing Agreement.

### III. CONCLUSION

For the above reasons, Plaintiffs' and Third–Party Defendants' motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.