OPINION
This timely appeal arises from the trial court's grant of summary judgment to Appellees on Appellant's claims of breach of contract and fraud. For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with law and this Court's opinion.
The facts and relationships of the parties to this matter are somewhat complex. Dominic D'Angona and Cristina D'Angona are husband and wife and principals of Appellant D'Angona Construction Company, a masonry contractor. Sebastian Rucci is Cristina D'Angona's brother and both are principals of Serendipity Development Company (Serendipity), a real estate development company. While Rucci was a plaintiff in the underlying complaint, he is not a party on appeal. Anthony Esposito and Chris Abraham are the principals of Appellee T.C. Quality Homes, Inc., a general contractor and land developer. Only Appellant D'Angona Construction Company and Appellee, T.C. Quality Homes are parties to this appeal.
Appellee was interested in purchasing a parcel of land called Pheasant Run (the development) which Serendipity owned. Appellee enlisted the help of Cristina D'Angona to negotiate a purchase price. Appellee and Serendipity entered into an agreement for the sale of the development. According to Appellant, Serendipity reduced the purchase price in exchange for Appellee's promise to give all masonry work at the development to Appellant. The purchase agreement also provided that Serendipity would perform certain engineering work for the roadway design of the development.
At some point, a dispute arose concerning that engineering work, but the parties avoided litigation on this issue by entering a settlement agreement on March 10, 1995. By agreement, the parties mutually voided from the previously prepared agreement two proposed paragraphs which stated:
 "B. During the negotiations for the Property, [Appellee] obtained a substantial reduction in the purchase price by representing to Serendipity Development that D'Angona Construction Company would get the brick work for all the homes in the future subdivision constructed on the Property. [Appellee] has denied in writing, this representation and has represented in writing its decision not to give [Appellant] any bricklaying work for the homes constructed on the property."
"7. [Appellee] reaffirms its prior oral promise to have [Appellant] do the bricklaying work for all homes constructed on the property. Additionally, this provision is a covenant which will run with the Property and is enforceable against [Appellee] its successors and assigns."
The settlement agreement also included an amendment which provided:
 "B. This release along with the letter agreement between [Appellee] and [Appellant] stating that [Appellee] and [Appellant] will continue to do business as usual as long as quality and price do not become an issue."
The "letter agreement" referred to was a document signed on March 10, 1995, by Tony Esposito and Chris Abraham on behalf of Appellee and by Dominic D'Angona on behalf of Appellant. The "letter agreement" states:
 "This is a letter agreement that states that [Appellee] and [Appellant] will continue to do business as usual, and will not let dealings of the past interfere with further business, as long as quality and price do not become an issue."
Also on March 10, 1995, Appellant and Appellee, by their respective agents, signed a "Subcontract Agreement." According to Appellant, the "letter agreement" and "subcontract agreement" form a contract between the parties.
On May 17, 1995, Sebastian Rucci, Rucci Development and Serendipity filed a complaint against Appellee and its principals alleging breach of the settlement agreement. On June 13, 1996, an amended complaint was filed adding Appellant as a plaintiff and charging Appellee with breach of contract and fraud. In Count II of the amended complaint, Appellant alleged that Appellee breached its promise to Serendipity to give Appellant all masonry work on the development. In addition to alleging an oral agreement between Appellee and Serendipity, Appellant also asserted that a written agreement was entered with Appellee on March 10, 1995. In Count III of the amended complaint, Serendipity and Appellant advanced that Serendipity sold the development property to Appellee due to Appellee's fraud and misrepresentation that Appellee would give all masonry work to Appellant. Appellant contended that in reliance on Appellee's representations, Appellant employed more bricklayers and purchased more equipment.
On February 6, 1998, Appellee filed a motion for summary judgment. On April 16, 1998, the trial court filed a judgment entry granting Appellee's motion for summary judgment with respect to both the issues of contract and fraud. The trial court stated that the writings purporting to form a contract failed to establish essential terms with reasonable certainty. Specifically, the trial court noted that the documents failed to establish a meeting of the minds between the parties that would permit Appellant to perform all the masonry work at the development. The trial court also focused on the parties' mutual deletion of the two paragraphs from the settlement agreement between Appellee and Serendipity, finding that such action demonstrated that there was no agreement for Appellant to perform all masonry work at the development.
On April 27, 1998, Appellant filed its notice of appeal. Appellant raises a single assignment of error but states two issues for review. The assignment of error alleges:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
Appellant's first issue inquires:
 "WAS THE CONTRACT ENTERED INTO BETWEEN APPELLEE AND APPELLANT D'ANGONA CONSTRUCTION CO. A VALID BINDING CONTRACT?"
Appellant argues that the trial court erred as the construction of a written contract between the parties necessitated the consideration of extrinsic evidence. Appellant contends that while the law requires a contract to encompass with reasonable certainty the essential terms of an agreement, courts are empowered to supplement the parties' express agreement with other terms implied by custom and practice. Mr. MackCorp. v. Rush, Inc. (1983), 11 Ohio App.3d 167 . Appellant asserts that terms of an agreement are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. Restatement of the Law 2d Contracts, section 33. According to Appellant, the action of the parties may show conclusively that they have intended to enter a binding agreement, even though one or more terms are missing or not yet agreed upon and that courts should endeavor to attach sufficiently definite meaning to the bargain by looking to the course of dealings between the parties. Id., comment a.
Appellant further argues that extrinsic evidence will be considered to give effect to the parties' intentions where the language of the contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning.Shifin v. Forest City Ent., Inc. (1982), 64 Ohio St.3d 635, 638. Appellant claims that in the present case, the actions of both parties show conclusively that they intended to be bound by an agreement and that the contract invested the language, "business as usual," with special meaning for which the introduction of extrinsic evidence was necessary to give effect to the intentions of the parties.
In analyzing the extrinsic evidence, Appellant considers the amendment to the release agreement and the "letter agreement," which indicate that Appellant and Appellee would continue to do business as usual, as well as the "subcontract agreement," which provided for specific obligations of both Appellant and Appellee relevant to masonry work. Appellant also observes that a letter from Appellee to Rucci states that "[Appellant] and [Appellee] have already come to an agreement for brick work." Appellant points to deposition testimony indicating that Appellee intended to be bound by the agreement to continue, "business as usual." (Esposito Depo. p. 106). Appellant maintains that consideration for a contract is evident in the subcontract agreement, which recites each of the parties' obligations.
Finally, Appellant argues that the trial court erroneously applied the statute of frauds as the contract was, in fact, in writing. Appellant contends that the contract is outside of the statute of frauds as it could be performed within one year.
Appellee responds that Ohio courts will not enforce a contract if its terms are not sufficiently definite and certain, so that the parties can readily ascertain the extent of their obligations at any time. Prestonv. First Bank of Marietta (1983), 16 Ohio App.3d 4. Appellee also asserts that an agreement is enforceable only if it includes the "essential elements" of the transaction. Mr. Mark Corp. v. Rush, Inc., supra, 169. According to Appellee, it is fatal to Appellant's claim that the "letter agreement," on which Appellant relies, does not include terms such as subject matter, price, consideration, quantity or duration. North CoastCookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342. Appellee also notes that it cannot be concluded that the parties intended that Appellant should perform all the masonry work at the development, since clauses addressing that issue were mutually eliminated from the settlement agreement.
Appellee also contends that the subcontract agreement is merely a "job document" which Appellee has its subcontractors sign as a set of rules or guidelines for its subcontractors to follow on a house-by-house basis. Appellee states that the subcontract agreement lacks any provision for quantity or duration of work.
Appellee asserts that no contract exists where the terms are so incomplete that the court cannot ascertain what the parties mutually assented to. Rulli v. Fan Co. (1997) 79 Ohio St.3d 374. Further, according to Appellee, it is fundamental that a court will not write a contract for the parties where the parties themselves have failed to reach a meeting of the minds on the essential terms of the contract. Id. According to Appellee, only after the parties demonstrate agreement on essential terms may a court look to parole evidence and course of dealing to supplement non-essential aspects of a contract. Id. Appellee advances that as there is no question that the writings in the present case did not give Appellant all masonry work on the development, the trial court cannot re-write the "letter agreement" to so state.
Appellee also maintains that parole evidence may only be used to clarify ambiguity where a writing is susceptible to two reasonable but conflicting interpretations. Wells v. American Elec. Power. Co. (1988),48 Ohio App.3d 95, 97. According to Appellee, it is patently unreasonable to interpret the letter agreement to provide that Appellant shall perform all masonry work, as the parties mutually voided language in the settlement agreement to that affect.
Appellee proposes that Appellant failed to demonstrate any provision for consideration, which is an essential term of a contract and which must be demonstrated in order to survive summary judgment. Forester v.Scott (1973), 38 Ohio App.2d 15, 16. Appellee further asserts that Appellant has failed to establish any reasonably certain damages and that even if a contract existed, it had a subjective right to terminate it subject to "price and quality."
Finally, Appellee argues that any agreement which may have been reached failed to satisfy the requirement of the statute of frauds that it be reduced to writing. R.C. § 1335.05.
Having reviewed the record before us, we conclude that Appellant's argument has merit and that the decision to grant summary judgment must be reversed.
When reviewing a motion for summary judgment, an appellate court must review the judgment independently with no deference given to the trial court's decision. Bell v. Horton (1996), 113 Ohio App.3d 363, 365.
Civ.R. 56(C) states in part:
 "* * * Summary Judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor * * *."
In addition, summary judgment under Civ.R. 56 is proper where:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
 Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346 quoting Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
"[M]aterial facts are determined by substantive law, and only disputes over facts that might affect outcome of a suit under governing law will properly preclude summary judgment; irrelevant and unnecessary factual disputes will not preclude summary judgment." Wall v. FirelandsRadiology, Inc. (1995), 106 Ohio App.3d 313, 322 citing Anderson v.Liberty Lobby, Inc. (1986), 477 U.S. 242,247-248; Perez v. Scripps-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 218-219.
At issue here is the existence of a written and/or oral contract to award Appellant all masonry work at the development. "An enforceable contract may be created where there is an offer by one side, acceptance on the part of the other, and a meeting of the minds as to the essential terms of the agreement." McCarthy, Lebit, Crystal Haiman Co., L.P.A.v. First Union Mgt., Inc. (1993), 87 Ohio App.3d 613, 620. "An essential element needed to form a contract is that the parties must have distinct and common intention which is communicated by each party to the other."Id. citing Noroski v. Fallet (1982), 2 Ohio St.3d 77. "If the minds of the parties have not met, no contract is formed." McCarthy, Lebit,Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc., 620 citingNoroski v. Fallet, 79. A contract is binding and enforceable if it encompasses the essential terms of the agreement; minor terms left unresolved do not destroy an agreement if the essential terms are incorporated into that agreement. McCarthy, Lebit, Crystal Haiman Co.,L.P.A. v. First Union Mgt., Inc., 620.
Turning first to the existence of a written agreement, the writings which Appellant contends comprise such an agreement lack essential terms to be enforceable. The essence of the dispute is whether there was a contract for Appellant to perform all masonry work at the development. Therefore, it is an essential element of the alleged contract that it be for all masonry work. Although the nature of the parties' respective businesses and the content of the "subcontract agreement" indicate that the business relationship between the parties was for performance of masonry work, none of the documents set forth by Appellant evidence a "distinct and common intention" that Appellant perform all the masonry work at the development. McCarthy, Lebit, Crystal Haiman Co., L.P.A.v. First Union Mgt., Inc., supra, 620. Therefore, on the face of the documents, there is no meeting of the minds and no written contract has been formed as Appellant insists. Id.
However, we must still consider the question of parole evidence. Appellant argues that parole evidence should be considered to "clarify" the term "business as usual" in such a manner that it awards Appellant all masonry work at the development. The general rule is that contracts should be construed so as to give effect to the intention of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53. Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions. Id. However, intentions not expressed in the writing are deemed to have no existence and may not be shown by parole evidence. Id. As the writings in the present case do not express or even refer to the essential term at issue, we cannot consider parole evidence.
Since there is no written contract to enforce, the question now is whether an enforceable oral contract exists. As relates to the present matter, Ohio's statute of frauds provides:
 "No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought * * * is in writing and signed by the party to be charged therewith * * *."
R.C. § 1335.05
The Ohio Supreme Court has stated that:
 "For over a century, the `not to be performed within one year' provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year. Thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds." (Emphasis added).
 Sherman v. Haines (1995), 73 Ohio St.3d 125, 126.
In the present matter, there is no evidence of a definite time frame placed upon the alleged agreement nor is there any allegation that the contract could not be performed within one year. Therefore, the agreement does not fall within the statute of frauds.
Appellant has submitted evidence which would support the formation of an oral agreement with Appellant as a third party beneficiary. Cristina D'Angona stated in an affidavit that Serendipity lowered the selling price of the development property in exchange for a promise that Appellant would receive all masonry work at the development. Cristina D'Angona and Rucci offered similar testimony at deposition. (Cristina D'Angona Depo. pp. 54-55, 57-58; Rucci Depo. p. 54). Viewing the affidavit and the depositions most favorably to Appellant, a factual dispute exists and reasonable minds could conclude that an oral contract existed in support of Appellant's claim. Therefore, the trial court erred in granting Appellee's motion for summary judgment on the contract claim.
Appellant's second issue asks:
 "DID A GENUINE ISSUE OF MATERIAL FACT EXIST CONCERNING WHETHER APPELLEE COMMITTED A FRAUD?"
Appellant next addresses Appellee's contention before the trial court that Appellant failed to state its fraud claim with particularity and failed to submit evidence of fraud to the trial court prior to the decision to grant summary judgment. Appellant asserts that it properly stated its fraud claim in paragraphs 36-40 of its complaint. Moreover, Appellant argues that reasonable jurors could have concluded that Appellee led Appellant and Serendipity to believe that it intended to consummate an agreement with Appellant in exchange for a price reduction on the sale of the property. Appellant states that Appellee made promises to Cristina D'Angona, when Appellee was well aware that she was a principal of both Serendipity and Appellant and that the record reflects that the purchase price was reduced in reliance on these representations.
In addition to its assertion that Appellant has generally failed to demonstrate any evidence of a fraud claim, Appellee responds that the undisputed fact that both parties mutually voided the paragraphs of the settlement agreement pertaining to the award of masonry work vitiates the primary element of a fraud claim; misrepresentation. Burr v. Stark Cty. (1986), 23 Ohio St.3d 69 . However, on review of the record we must conclude that here, too, Appellant's argument has merit.
Although it does not appear to be the primary issue on appeal, Appellant is correct in stating that it stated its allegation of fraud in its pleadings with particularity, pursuant to Civ.R. 9(B). Appellant alleged in its amended complaint that Appellee obtained concessions from Serendipity in bad faith with the intent to deceive both Serendipity and Appellant and that Appellant relied on these misrepresentations and was induced to employ more laborers and to purchase additional equipment.
With respect to the decision by the trial court to grant summary judgment on the fraud claim, "[t]he elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54,55.
In the present matter, Cristina D'Angona alleged in her affidavit that she is the president of Appellant and a principal of Serendipity and that the primary reason Serendipity sold the development property to Appellee was the Appellee's representation that it would give all masonry work at the development to Appellant. Based on this affidavit, one could infer that Appellee represented to Cristina D'Angona in her capacity as a principal of Serendipity that Appellant would receive this work. Given that Appellant did not receive the work as represented, it can be construed that Appellee made this representation with utter disregard for its truth. In addition, Appellant would be justified in its reliance on Appellee's representations, as Cristina D'Angona was a principal of both Serendipity and Appellant. Thus, an intent to mislead Appellant can also be extrapolated from the apparent disregard for the truth of the representations in conjunction with the fact that Cristina D'Angona was a principal of both Serendipity and Appellant. Some evidence of reliance and damages is found in the deposition testimony of Dominic D'Angona, who testified that Appellant turned down other work because of its supposed commitment to Appellee. (Dominic D'Angona Depo. p. 81, 91-92).
Construing the evidence on the record most strongly in favor of Appellant, reasonable minds could conclude that a fraud claim exists. Certainly, there are disputed issues of material fact on the record. Accordingly, summary judgment was not proper. Civ.R. 56.
For all the forgoing reasons, we reverse the judgment of the trial court and remand this matter for further proceedings according to law and consistent with this Court's opinion.
HON. CHERYL L. WAITE, HON. JOSEPH J. VUKOVICH, and HON. JOSEPH O'NEILL.